Alright, the last matter on for argument today is Matthew James Smith v. Tumalo Irrigation District. Matthew James Smith v. Tumalo Irrigation District Isaac Ruskin arguing for the appellant and Mark Reineke and Sean Martin splitting time for the appellees. Is that correct? Alright. Good morning. Isaac Ruskin Good morning, Your Honors. Isaac Ruskin. May it please the Court on behalf of Plaintiffs Matthew Smith and others. Aspirationally, I'd like to reserve three to five minutes of my time for rebuttal depending on questions. And also, absent specific questions on the federal NEPA claims, I'd like to spend most of my time in oral argument addressing the second and third issues. Briefly, Your Honors, that being the geographic scope of the rights held by the district and then the application of state law, both interference with easement and private nuisance law to the district rights, which are separate issues. I think that's important to note because the district court conflated the issue of the geographic scope of the easement with the state law claims. Essentially, the findings and recommendations on the district's motion for summary judgment and on plaintiffs' motion for partial summary judgment go through the process of analyzing the language of Section 946 of the Right-of-Way Act. And then at the end of analyzing that for the geographic scope, the findings and recommendations essentially conclude that because this act gives the right to relocate the canals and the means of irrigation anywhere within... Well, so are you saying, okay, that the district court was wrong on its analysis of 946? Yes, Your Honor. All right. The expressed language is clearly 50-50 horizontally, but somewhere in the district court it said 50 up and 50 down. But there's also another section that says sort of incidental. And here it's... Let's say I agree with you that it doesn't lend itself to saying 50 up and 50 down, but that's not what we're dealing with here. It's, I mean, incidental to putting something that's a canal down into a pipe. You're going to have to go a little bit below, and that's what happened here. And I agree with you. I'm not sure that it means you can put an overhead thing of 50 feet up and 50 feet down, but here that didn't happen. That's right, Your Honor. Or at least at the time we briefed this, the piping hadn't occurred on the plaintiff's properties. So the actual depth of the canals that had been excavated was speculative at that point. But it isn't just a couple feet below where the canals existed on some of the plaintiff's properties, which the laterals on some of the plaintiff's properties are quite shallow. Is it 50 feet below? It is not 50 feet below as far as I know, Your Honor, no. Is it just a little bit below? It depends, Your Honor, on what you mean by a little bit below. I believe there were photos that were submitted in the briefing, or perhaps they won't. I can submit a letter to clarify one way or the other. But some of the excavation was deep enough so that you could stand all the way in the excavation and look up and see where the piping was going to be above. Your head would have been feet below the excavation. So like six feet? Yes, Your Honor, in some places. Although I believe the expert – or the declaration of Chris Shull describes that the – in order to safely protect the piping from weather, it has to be buried at least three feet below the ground. And that's why they chose to do the excavation in these feet. So if you view three feet as the minimum, it still doesn't change the fact that the rights under 946 doesn't grant the right to any subsurface rights other than the rights that were fixed by the location. But it does – it doesn't preclude the digging to the extent necessary to construct or maintain the canal. So how far can they dig in order to construct and maintain? That would be reasonably necessary. Reasonably necessary. Well, the reasonably necessary test comes into play under the state law claims. The issue – the standard for where the district can excavate, how far they can excavate, isn't a – That's under 949. 949 says that nothing in 946 or 949 shall authorize the canal or ditch company to occupy such right except for the purpose of said canal or ditch, and then only insofar as may be necessary to the construction, maintenance, and care of the canal. So looking at that language, according to you, how far can they dig? They – To construct or maintain the canal. Thank you, Your Honor. They are allowed – you're right. They are allowed to excavate for the purpose of installing the pipes, but the pipes can't be installed. That excavation right doesn't include the right to install the pipes outside of the ground occupied by the water, whether that's, for example, if it's a ditch that's only a foot deep. They can excavate below that for the purpose of installing the pipe, but the pipe can't be installed 5 feet or 6 feet or even 3 feet below where the canal or the lateral was. They're allowed to excavate below that for the purpose of installing the pipe, but the pipe can't be situated there. It's actually what happened in the Swalley case, and this is described in some of the briefings by the district. Because of the court's decision in Swalley, the district court, which wasn't challenged, which was that the piping had to be placed where the actual ground of the laterals and the canals were, it required the use of what the district is called mounding over the top of the – over the canals to create that 3 feet, that weather barrier that protects the piping. And, again, that's something that we believe they would be allowed to do if you assume they can convert the canals to piping, which is a different issue. Even if the – even if Section 949 affords them the right to excavate for the purpose of constructing and maintaining their irrigation canals, that doesn't mean that there is a grant, a per se right, for them to change the canals and laterals to buried piping. Both the district court and the district have argued this case as if the subterranean right or the right to excavation granted by 949 automatically creates a right to install piping. And that is, I think, part of the problem with the district court's decision, what I said when you get to the end of the district court's analysis of the findings and recommendations. But assuming that they can change the existing canal to piping, your theory is that the piping can't go any lower than where the existing canal is. Yes, Your Honor. That's correct. But we, of course, don't assume that they can convert these open canals and laterals. What is your legal basis for saying they can't convert the canal to a pipe? The basis for saying they can't convert the canal to the pipe goes to the state law issues of the improper use of easement or the— But it's not based on the federal law. You're saying there's something in state law that prevents them from changing the canal to a pipe. That's exactly right, Your Honor. And those are the issues we believe the district court should not have reached because they were subject to disputes of material fact, both for the interference with easement claim or the improper expansion of easement claim and the private nuisance claim. Okay. If, for the sake of argument, we disagreed with you about the state law barring the district from changing to a pipe, then you would have to rely on the idea that the pipe can't be set below where the existing canal is. That's right, Your Honor, which is what the district court reached in Swalley because as virtually every other, other than the District of Oregon, has interpreted the rights under 946 and 947 and 949, obviously the statutory scheme has to be read together. But upon construction of the canal, to get those rights made permanent, they had to present their map of that to the Secretary of the Interior. And upon presentment of that, it fixed the location of the rights in place to whatever was originally granted. They're not allowed to relocate it anywhere within, anywhere they want. They can't relocate it, but they do have an easement to the extent necessary to maintain it. That's right. Yes, yes, Your Honor, that's correct. And if they think changing it to pipe is necessary to maintain it and digging it a little lower is necessary to maintain it, is there a problem with the federal easement? I'm sorry. I'm sorry, Your Honor. If putting it a few feet lower is necessary for the maintenance of the irrigation, is there a legal problem with what they're doing? Placing it lower, yes, Your Honor. There would be a problem with that because they were never granted those rights beyond the rights that originally existed when these were originally constructed. Like the statutes say that they can do it, they get an easement to as far as necessary to maintain, no more than that. That's right. So I think then you would need some evidence saying what they're doing is not necessary. So do you have— Converting the canals and the laterals to—I think I understand, Your Honor. The—converting the canals and laterals to underground buried pressurized piping is not necessary. We reject that process. Okay, do you have—okay, but other than your say-so, do you have evidence to say that—to create a genuine dispute of fact as to whether it's necessary? Yes, Your Honor. Well, on the specificness, on the necessity, we argued in the briefings below and to the district court, I think it's at ER 37, we go into the facts that are in the administrative record and those presented that demonstrate that the conversion of the open canal to buried underground piping is not necessary based on the facts that were presented because the purpose of the canal is not for giving any specific allotment to the district's patrons. It's not for promoting any kind of specific environmental or conservation benefits. It's not for the purpose of doing any kind of— sorry, what's the word I'm looking for? The purpose of the easements are solely to create irrigation. The purpose of the act was to allow settlers and irrigation district companies to reclaim these high desert lands. And so the evidence in the record shows that despite what the district is saying— Well, except that you're kind of—that it sort of goes round and round because obviously I think it's undisputed that by putting the water in a pipe that you lose less water. So if the purpose is to irrigate, it would seem that— I mean, let's just say if the canal's the way they were, like all the water just went on the lands where they were. Now, that doesn't help. You can't irrigate with the water. They can't give the people that have rights to the water the water if it all just goes off on one piece of property. And here they're basically saying it seems it's undisputed that by putting it in a pipe there's more water to go to the people that are entitled to the water. Am I right on that? Yes, Your Honor, you are right on that. But that doesn't create necessity, which is what is required under state law. It's not simply convenience or that the modification of the use would be better or more efficient or a reasonable modification, which is the standard articulated in the findings and recommendations. You notice when they address the state law claims— Well, you're confusing the state law with the federal. I mean, I think the federal grant is for the easement. The scope of the easement goes to the extent necessary for the construction and maintenance of the irrigation system. So you're saying you're relying— As far as your dispute about whether the piping is necessary, you're relying on the administrative record is what you're saying. I want to clarify something, Your Honor. I'm asking about a factual dispute as opposed to your argument based on state law. You're contending that it's not necessary to change it to pipe. The defendant's position, it is necessary because the water is running out, too much is getting lost, people are falling into the ditches and dying. We need to change it to pipe. Is there genuine—is there evidence where you challenge any of those factual determinations? Yes, none of the—or it is not that we are presenting different facts. It's that the facts in the administrative record do not support the idea that to accomplish irrigation, which is the only purpose of these canals, it's not public safety. Well, I understood one of your NEPA challenges, that you said the EA was a predetermined outcome. That was that—but I looked in the record. Is there any evidence in the record that the agency had already decided to go with the piping plan before it drafted the EA? Is there anything in the record? The—sorry, Your Honor, the federal agency did not draft the EA. The EA was drafted by the Farmers Conservation Alliance, which is these piping projects that are occurring across Oregon, which is described in the EA. This is similar to many projects that are occurring in Oregon. Well, what evidence do you have that it was a predetermined outcome? No direct evidence, Your Honor, only by implication. So we're doing this on an APA review, right? On the federal claims only. Yes, on the NEPA claims. Yes, yes, that's right, Your Honor. So—and you, I think, also felt that the several drowning deaths occurred in adjacent districts in 1996, 97, and 2004. So you said, well, it's not reasonable that they claimed that public safety was— but it's a pretty deferential review, isn't it? It is, Your Honor, yes. I mean, there have been some people that drowned. Yes, that is correct. And I don't think you have to be a rocket scientist to realize that it's harder to drown in a pipe than it is in a canal. Much harder. I mean, if you're a parent and you let your kids run around the canal, CPS or Child Protective Services might be after you. If there's a pipe underground and they're running on the land, they're not going to say, oh, my gosh, they're going to drown in the pipe, right? That's correct, Your Honor. And I think that's why the district court essentially took that stance, although it isn't articulated quite the same way in the findings and recommendations. But at the preliminary injunction stage, the district court judge did say, you know, it would be based on common sense. It would be surprising. But there's quite a lot of latitude on—when you review under the APA, you have a pretty high standard to show that, I think, you wanted them to review certain—there was an alternative, the farmers— what do you call that? Conservation allowance.  Yes, that's right, Your Honor. That was your favored outcome. Exactly. Yes, that's right, Your Honor. But you're right. It is the purpose and needs statement. It is a rule of reasonableness. So if Your Honors agree that— That seems a fairly hard rock to push uphill. Yes, Your Honor. I agree. We took up your state law arguments, which is where you actually wanted to start. But I think my understanding is under state law, or at least I think the hill you have to climb, is that the withdrawal of a benefit is not a nuisance, right? So there's the water, the seepage, that has benefited your clients. The withdrawal of that is not a nuisance under state law. There is no such state law in Oregon. The state law that has described those that's cited by the district comes from Idaho and Utah, which has separate versions of private nuisance and real property law. Do you have any reason to believe that Oregon courts would come out differently on that issue? Yes, I do. Because under Oregon law, if we're talking about private nuisance, the only standard is a substantial and unreasonable interference with the use of one's property. And easement law, the nature of these rights of way are in the nature of an easement. Oregon law is exceptionally clear that the rights of the dominant and servient estate are mutually limiting. Just because the dominant estate is using the property in one way, and it creates an effect on the servient estate, it doesn't remove the servient estate's rights in the same way that it appears that Idaho and Utah cases have assumed it has. There is one case, Oregon case, cited by the district. I believe it's Clever v. Judd that does describe an Oregon case where something similar happened. But in that case, the irrigation canals were on the district's land and the landowners were actually— So when an easement is established by a conveyance rather than a prescriptive use, why should we assume that the parties intended an incidental benefit to the servient estate that arose after the conveyance to limit the easement holder's use of the easement? Well, the extent whether the nature of the harm is the removal of an incidental benefit or if, in fact, the devaluation that the plaintiffs put into the record and the damage that would result to the plaintiff's properties from the conversion, whether that truly is the nature of removal of an incidental benefit or if it is property damage beyond the removal of an incidental benefit is a matter of factual dispute, which was not appropriate for the court to decide at summary judgment. But what's the factual dispute? I guess that's what I'm sort of struggling to really understand, because on your easement claim, on your private nuisance claim, the devaluation of property from loss of vegetation, the loss of trees, all that really is tied to the seepage, which is an unintended benefit that went to the landowners that's now going to be removed with this project, right? What am I missing? Not necessarily, Your Honor. The expert opinion that we put into the record assumes the loss of all the trees in the easement area, as pointed out by the district, but that wasn't necessarily the full extent of the devaluation. The expert relied on that as one of the basis, but it wasn't the sole basis for the determination. And the district, the reason why it's a factual dispute — What's the other basis for losing value in the property with a closed piping system rather than open — They're not just closing. They're also cutting trees on the plaintiff's property. They're actually — they're not just removing water. They're actually affirmatively doing cutting on the properties and the — Beyond the scope of the easement? Not beyond the scope of the easement, as far as I'm aware. Within the 50-foot radius. So within the easement, they're cutting. Right. And the actual excavation itself will also cause property damage. They will have to cut to cut on the property to remove objects and to do the excavation. And that all goes into the devaluation of the property as well. But the district has said there will not be devaluation. They put all these landowner declarations into the record that says, well, this is not going to change. My property is not going to be damaged at all. If anything, it's going to be benefited. And our clients vehemently dispute that and put facts in the effort, creating a factual dispute. I'd like to reserve my 40 seconds for rebuttal.  We've asked you a lot of questions. Unless my colleagues have additional questions, I'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Mark — Good afternoon. My name is Mark Reineke. I'm here on behalf of the Defendant Appellee's Tumalo Irrigation District. The district court properly determined that the unambiguous language of the Act of 1891, also known as the Right-of-Way Act, allows the conversion of an open, earthen, leaky, dangerous canal to piping. It's a reasonable — and there's this mix of when we're talking about the federal and we're talking about the state. Does the record include documentation of the original conveyance of the right-of-way by the Department of the Interior? And if so, where is that in the record? The original mapping or — Well, the original conveyance of the right-of-way by the Department of the Interior. Is that on the record? The conveyance is the Act itself. And the settlers in the irrigation districts were required to prove up and show that they could do what the Act was intended to do. And once they proved up, then their adjudicated rights would be granted so that they could put water to the land and make beneficial use of it. Do the plaintiffs have any water rights to the water in the canal? Yes. The plaintiffs are all patrons of Tumalo Irrigation District. And so they have a right to their point of delivery to put water onto their land for growing crops. They do not have a right to the leaking water. And again, this is an earthen canal. It's not a system where you can say, there's water here and then there's nothing below it. The ground gets saturated. Right now, because of drought, because of ESA issues, because of habitat conservation issues, the plaintiffs, including the plaintiffs and all the patrons in Tumalo Irrigation District, have to go — first of all, they get shut off before the end of the year, most years now. They also have to go on rotation agreements. When you go on a rotation agreement and you don't put water down the canal for a week while you're doing another neighborhood, then when you put water in, it takes a while to recharge because it's not a pipe. It's earthen. And it seeps into the ground. So to say that there's some underneath where the water is in a canal is not part of the easement is just absurd. So the project is partially complete, is my understanding, correct? Has the Irrigation District already completed the conversion to a pipeline on any of the plaintiffs' property? Yes. On the plaintiffs' properties, it has been completed. There's basically about — I'd have to look at my notes, but I believe about 46 miles completed out of about 68 total miles of district-owned facilities. Then there's also the private laterals that that doesn't include. But 66 percent of the district's canals have been converted to piping over the last 25 years. To what extent is plaintiff's easement claims governed by federal law, and to what extent are they governed by state law? And why, and do you have authority to support your position? The interpretation of the Act of 1891 to determine what the intent was and what the use was, and I thought it was really interesting, the comment that Council made, the purpose of the Act is to deliver adjudicated water rights to property. And all of the evidence, and there's no dispute that that's the purpose of what the Act is. And because they wanted to put water in dry places and develop the land and encourage people to settle these areas. And so the Act itself provided the ability to do that. In terms of rules of interpretation for the scope of the easement, are we applying federal law or state law? I think that you can, you've got de novo review of a federal statute. So I think that you're using, you could use federal law, you could also use state law. The good news is they're virtually identical in how you analyze the scope of the 1891 Right-of-Way Act. There really isn't any difference. So whatever choice you make, I think that either way is appropriate. I have problems with the interpretation that you could go 50 above and 50 below. I see the language as saying 50 horizontally and then the other is incidental. But can you tell me what your view is on that? I can. And in the summary judgment proceedings, the plaintiffs took the Right-of-Way Act and changed one of the words from the word each to the word either. And the district court said, well, wait a minute, that either means two sides, each means all sides. And in the pleadings in this case, the plaintiffs have gone to a great extent to try to push away from that with an awful lot of information about how this court should interpret the word each and how each really means either. Well, the word is the word, and that's the word that they used. And each means all sides. It doesn't mean either side. It doesn't mean two sides, which either does. And so if you read the plain and unambiguous terms of the Act, then clearly it's 50 feet in all directions. That said, I understand what the court's concern is on that. And so we say, okay, if that's true, that it really only meant the horizontal, not the vertical, then really that comment of the ground occupied by the water plus 50 feet was only determining how far out to the sides we go. And we know that's important because at the time they said, we're going to need to have certainty in the future as to whether or not where the line should be drawn, and so a property owner knows where things are. You have to remember that the reason you wonder, well, why would they do this ground occupied by the water plus – why don't they just make it a number? And the reason for that is because you don't know in any particular given location whether it's going to be a 2-foot-wide canal, a 6-foot-wide canal, a 50-foot-wide canal. So it's the area that you've created for the system plus the land on either side of the marginal limits thereof. And the marginal limits thereof, ground occupied by the water, has to mean that it includes the ground around the water that holds the water in place, although technically it doesn't really hold it in place because it seeps into the ground so much. They lose 50% of the water, and so the environmental benefits aren't there. The benefits for farmers aren't there. The benefits for other farmers aren't there. And so you make that conversion. And if I understand – I have a child in grade school, so I think about geometry, but there's – if there's – essentially the canal is like a U. Is that right? A U-shape? I mean, one could argue there's just one side. There's the top, and then there's the U, and then it would be 50 feet all around that U. I mean, is that a fair interpretation of the term each? It is, but you have to remember that it does include the ground. And it has to hold up, so there's – it's built up on the sides in many places. Sometimes it's just down in the ground, but other times it's – If the whole U of the canal is a side, then you would get 50 feet all around the U. Is that right? That may well be how it was intended originally as well. Do you need this, though, if – I think there's the other argument, which is that it's – you have an easement to whatever is necessary to maintain. Yeah, so it's interesting. I think the plaintiffs misunderstand easement law. When you have an easement – and they've even acknowledged that it's mutually limiting – just because you have an easement to use a certain amount of space, it doesn't mean that you can do it unreasonably, even if the federal statute says you can. And so the reasonableness is important because, in this case, you have a situation where the purpose of the act is to deliver certificated water rights. Right now, this day, the last four years in a row, irrigators in Tumalo Irrigation District, including the plaintiffs, are not getting their certificated water rights. So you have to do something to try to alleviate that. Also, under the Endangered Species Act in the Deschutes Basin, they've created a habitat conservation plan, effectively, to allow the Irrigation District to continue to deliver any water. And to do that, they had to meet certain obligations, and those obligations require more water in the river for fish and wildlife. And so you have to remember, this is an artificial canal built through the desert. At any time, the Irrigation District could fold or decide to do something different or decide that these property owners don't get any water and we're just not going to run water through their property. There's no legal obligation to—you can't force somebody to deliver water to seep into the ground for their personal enjoyment. You have to do what's reasonably necessary under the circumstances to provide the intent for which the easement was granted, which is to deliver water. Either of my colleagues have questions, so I'll allow them. All right, your time's up. Thank you.  Good morning. Good morning. May it please the Court. Sean Martin for the Federal Government Appellees. This Court should affirm the District Court with regard to the NEPA claims. Both Judges McShane and Judge Kasabai reviewed the NEPA claims and correctly rejected them. And just as a brief roadmap for where I'll go, I'll start with the NEPA purpose and need, move to the NEPA range of alternatives, and move on to the NEPA cumulative effects. So they did make a challenge about the cumulative effects analysis. Can you point me to any case where the Court has invoked the waiver rule to a challenge to a cumulative effects analysis? I don't have one on the tip of my tongue. I don't know that it would be different than the other NEPA case law with regard to a NEPA analysis, that being the cases we cited in our briefing, public citizens from the Supreme Court, and the Onda v. Jewell case from this Court, where, you know, there's a serious problem when people are expected to participate in a NEPA proceeding and do participate and raise certain issues, but then don't raise other issues at all. If that doesn't... Well, so, but if you assume that an environmental assessment analysis of cumulative impacts must provide some qualified, some quantified or detailed information, why, well, how did the EA satisfy that requirement here? Well, it satisfied it because there was a cumulative effects analysis that, you know, discussed up front that there were other modernization projects in the watershed and that would replace various mileages of open canals with piping and what the downstream benefits of those other projects would be just as a setup, and then specifically talked about cumulative effects to wetlands and riparian areas and noted that, gosh, you know, there's minimalized local effects here. These aren't even wetlands. The wetlands in this project that are going to be affected by the right-of-way, by the canals, are not jurisdictional wetlands. They don't rise to the level of being regulated as wetlands by either the state of Oregon or by the federal government. You know, they're created as a result of the seepage. You know, they're not actually natural wetlands. And, you know, as the district court reasoned, when you have that level of minimalized local effects to those wetlands combined with 162 miles of improved riparian and wetlands conditions downstream, including Oregon spotted frog habitat, it's reasonable that this agency determined there were minor cumulative effects. And I would point to the court, there's an attachment to the EA, quantification tables for the different resources, areas, and the effects. You know, there are no effect, a minor, a moderate. And, you know, minor for wetlands for riparian lays out as a key measure the jurisdictional status of the wetlands that would be affected. So when you have a minor overall cumulative effect from a project, as in here, you're talking about when you have effects only, negative effects only to non-jurisdictional wetlands. So I'd point that to the court's attention. You also have, you know, habitat effects that that quantification table looks to, Judge Callahan. And here, you know, you have an increase in habitat quality for spotted frog. The U.S. Fish and Wildlife Service concluded this project was entirely beneficial to the ESA-listed Oregon spotted frog. Whereas you do have impacts to the existing landscape and the existing animals, the vegetation. However, none of those plants by the canals are protected under Oregon state law or under federal law. There's not any listed plant species. And the wildlife species, there's no protected species by the canals. And instead, the species are urban adapters. So I think you have a rational analysis, albeit brief, Your Honor. You know, the other problem, I think, with the plaintiff's argument on the cumulative effects is that not only did it not raise anything, but no one else raised anything. So I believe there's evidence in this record to affirm the district court on cumulative effects simply because they didn't bother to raise anything about any cumulative effects and maybe put the agency on notice that there's something more you should be talking about. Here's something specifically about cumulative effects that we have any kind of concern with. We're not asking for magic words or incantations, but just to flag that there's any kind of concern. But nothing was said, and no environmental groups raised any concerns about cumulative effects or effects on wetlands either. So it doesn't seem appropriate, you know, perhaps to need to consider the merits of the claims. But nevertheless, you know, the district court went ahead and found that it was a rational analysis on the cumulative effects. Judge Callahan, you asked the question, well, was it really preordained? This is back to the need for purpose and need. Was it preordained that they were going to do the pipeline? And the answer is no, and that's because both of the action alternatives that the Conservation Service considered both addressed public safety, even if the other action alternative, which would have kept the canals open. So you had an EA and you had a FONSI, right? Yes. So they basically said it was preordained, and then they also wanted – there was an alternative that you didn't analyze? Right, right. That they thought was – should have been analyzed.  And it was analyzed, and the EA explained why it wasn't considered further. And, you know, and there are really, I would say, three reasons it wasn't considered further. One, didn't address public safety at all. You know, just increasing the efficiency of private on-farm infrastructure, the on-farm efficiency alternative is the one the plaintiffs wanted. You know, that's going to leave things entirely the same on the irrigation district's infrastructure. It's going to leave the earthen canals, and instead it would address the private property infrastructure. So there's a public safety – leaves that purpose and need wanting. And also, it doesn't address the problems with the irrigation district's infrastructure and these earthen canals that deliver the water to the private property line. This doesn't have anything to do with that whole problem with the 30% loss every year. And finally, the third problem is it doesn't – it's not – regulating private property infrastructure isn't something this irrigation district has any jurisdiction over. So this project would really be a non-starter because the requirement under the federal law is that the irrigation district has to have control over the works and, you know, the voluntary efforts by the private property owners. So is there something that we need to publish on this – in this area that courts are regularly having to wrestle with because we haven't published? I wouldn't – I wouldn't necessarily think so about the NEPA claims, to be honest, Your Honor. I think what we have here is a factual record with substantial evidence supporting, you know, the agency's purpose and need. There's reasonable support in the record for the range of alternatives and adequate rationale for why a particular alternative was not studied further. And you have, you know, a cumulative effects analysis that has a basis in the record. I don't believe there's a question of law or regarding, you know, interpreting NEPA that would need to be addressed. Okay. Thank you. Unless the panel has any further questions. Thank you. We don't appear to. Thank you. Thank you, Your Honor. There is a critical difference between applying federal law to interpret the rights granted under 946 versus state law. They're not identical. The difference is if interpreted under federal law, which is appropriate, all ambiguities have to be resolved in favor of the sovereign grantor. That means any ambiguities in the rights granted under 946 or the nature of those rights or the way they can be relocated or modified, any ambiguity has to be resolved in favor of the federal government. Now, the reasonable necessity is the standard under Oregon state law for modifying the use, but the reasonable necessity does not apply to the rights granted under 946. Those rights were absolutely fixed in place by the filing of the map showing the rights when that was done roughly 100 years ago with the Secretary of the Interior. But they're not trying to, like, literally move the irrigation canal, right? They're just taking it where it is. Like, if you looked at a topical – topographical map, they're not proposing to change the location. Is that right? I don't believe – because the pipes were not piped on plaintiff's properties, there was no opportunity to present the way that was exactly going to be done when we were briefing this. But I do believe – I don't want to say anything that's not supported by the record, but it could be the case that moving the pipe within the 50-foot – anywhere within the 50-foot sloth is part of the rights that they claim that they have. So whether it's being – They're not moving the – including the whole easement. They're not trying to relocate the easement. Well, they're saying they have the right to, and we're saying they do not because the 50-foot is a reference only to maintenance and access. I just haven't understood any of your claims to be that somehow they're changing the map of the easement. It's more of the – the dispute is over the scope of the existing easement. Is that correct? Two disputes. One, they are burying the pipe below where the – where the canals are currently located. And two, even if you assume that the pipes are being buried where they are shown on the original grant, modifying requires reasonable necessity, which not only do the facts not support, because necessity for the purpose of irrigation isn't supported, but also because the increased burden on the surveying the state and the nature of the damage to plaintiff's properties is a matter of factual dispute. On the reasonable necessity for the purpose of irrigation, let's say we assume for the sake of argument that the safety purpose is not included in that. They have said, you know, that we're losing 30 percent of the water. This is a problem for all the patrons of the irrigation district. Why isn't it necessary to convert it to pipe? More convenience, more efficiency, better use of the water, and conserving the 50 percent that's being lost to seepage and evaporation doesn't show reasonable necessity, especially when there are any other number of means that are less invasive, less obtrusive to plaintiff's rights, which are limiting on district's rights that could have been employed to create the same savings result. The district has chosen the most destructive, most invasive, most deleterious on plaintiff's rights option that they could have chosen, and there's no evidence in the record to support that it is necessary for them to do so for the purpose of irrigation. Do either of my colleagues have any additional questions? All right, we've allowed you to go a bit over, but thank you both for your argument in this case, and this matter will stand submitted. This court is in recess until tomorrow at 9 a.m. Thank you.
judges: CALLAHAN, NGUYEN, SUNG